**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| VERONICA HIDALGO<br>5208 Dowgate Street, Apt 105<br>Dublin, Ohio 43016,<br><br>Plaintiff,<br><br>v.<br><br>BRENTLINGER ENTERPRISES D/B/A<br>MIDWESTERN AUTO GROUP<br>6335 Perimeter Loop Road<br>Dublin, Ohio 43017,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Veronica Hidalgo, by and through undersigned counsel, states and avers the following as her Complaint against Defendant Brentlinger Enterprises d/b/a Midwestern Auto Group ("MAG"):

**PARTIES, JURISDICTION, AND VENUE**

1. Hidalgo is a resident of Dublin, Franklin County, Ohio.
2. At all times herein, Hidalgo was acting in the course and scope of her employment.
3. MAG is a general partnership with its principal place of business located at 6335 Perimeter Loop Road, Dublin, Ohio 43017.
4. MAG is and, at all times herein, was an employer within the meaning of 42 U.S.C. § 2000e *et seq*. ("Title VII")
5. MAG is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.
6. MAG is and, at all times herein, was an employer within the meaning of 42 U.S.C. § 2000gg *et seq*, the Pregnant Workers Fairness Act. ("PWFA"),

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hidalgo is alleging Federal Law Claims under Title VII and the PWFA.

8. Hidalgo has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

9. On or about April 4, 2025, the Equal Employment Opportunity Commission issued a Notice of Right to Sue letter to Hidalgo regarding the Charges of Discrimination she filed against MAG. See Exhibit A.

## FACTS

10. On or about September 1, 2023, Hidalgo began working for MAG.

11. MAG employed Hidalgo as a parts advisor.

12. Hidalgo is a woman.

13. During her employment, Hidalgo was pregnant.

14. Hidalgo is Hispanic.

15. Hidalgo is of Puerto Rican national origin.

16. Hidalgo is bisexual.

17. MAG paid Hidalgo significantly less than similarly situated male coworkers.

18. MAG paid Hidalgo significantly less than similarly situated heterosexual coworkers.

19. MAG paid Hidalgo significantly less than similarly situated coworkers who did not have a Puerto Rican national origin.

20. MAG paid Hidalgo significantly less than similarly situated coworkers who were not Hispanic.

21. MAG paid Hidalgo significantly less than similarly situated coworkers who were not pregnant.



SPITZ

22. MAG Parts Manager, Steve Fisher, made the decision to pay Hidalgo significantly less than similarly situated coworkers.

23. Fisher was Hidalgo's supervisor.

24. Fisher is Caucasian.

25. Fisher is a man.

26. Fisher's national origin is that of the United States.

27. Fisher is heterosexual.

28. Brad Putnam, a MAG Parts Manager, consistently harassed Hidalgo and directed discriminatory comments at Hidalgo throughout her MAG tenure. ("Discriminatory Comments").

29. Putnam was Hidalgo's supervisor.

30. Putnam is Caucasian.

31. Putnam is a man.

32. Putnam's national origin is that of the United States.

33. Putnam is heterosexual.

34. The Discriminatory Comments included Putnam, on or about September 5, 2023, telling Hidalgo that she was incapable of carrying things due to the size of her breasts.

35. The Discriminatory Comments included Putnam, on or about October 10, 2023, calling Hidalgo a "lesbian."

36. The Discriminatory Comments included Putnam, on or about October 17, 2023, telling Hidalgo that Puerto Ricans, Mexicans, and other Hispanic people are "all the same."

37. The Discriminatory Comments included Putnam, on or about October 18, 2023, telling Hidalgo that she was a "baby" and that she was "still in diapers."



SPITZ

38. Putnam made the Discriminatory Comments in front of various other MAG employees including, but not limited to, Parts Advisor Dylan Collins.

39. The Discriminatory Comments were severe.

40. The Discriminatory Comments were pervasive.

41. The Discriminatory Comments were offensive to Hidalgo.

42. A reasonable person would consider the Discriminatory Comments to be offensive.

43. A reasonable person would consider the Discriminatory Comments to be severe.

44. A reasonable person would consider the Discriminatory Comments to be pervasive.

45. Putnam made the Discriminatory Comments because of Hidalgo's gender.

46. Putnam's Discriminatory Comments constituted harassment.

47. Putnam's Discriminatory Comments created a hostile work environment based on gender.

48. Putnam's Discriminatory Comments caused Hidalgo emotional distress.

49. Putnam's Discriminatory Comments are intolerable in a civilized society.

50. Throughout her MAG tenure, Hidalgo repeatedly and consistently told Putnam that the Discriminatory Comments were unwelcome and offensive. ("Discrimination Complaints")

51. MAG has a policy against discrimination ("Discrimination Policy").

52. MAG's Discrimination Policy precludes retaliation against employees who complain about discrimination.

53. Alternatively, retaliation against employees who complain about discrimination is permitted by MAG.

54. MAG's Discrimination Policy precludes intimidation against employees who complain about discrimination.

55. Alternatively, intimidation against employees who complain about discrimination is permitted by MAG.

56. MAG's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

57. MAG's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

58. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by MAG.

59. MAG's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

60. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by MAG.

61. The Discriminatory Comments violate the Discrimination Policy.

62. MAG has a policy to investigate reports of violations of the Discrimination Policy.

63. An investigation should include interviewing the complainant.

64. An investigation should include interviewing the subject of the complaint.

65. An investigation should include interviewing the subject of the reported discrimination.

66. An investigation should include interviewing witnesses to the reported discrimination.

67. An investigation should include getting a written statement from the complainant.

68. An investigation should include getting a written statement from the subject of the complaint.

69. An investigation should include getting a written statement from the subject of the reported discrimination.

70. An investigation should include getting a written statement from witnesses to the reported discrimination.

71. In response to Hidalgo's Discrimination Complaints, MAG did not interview Hidalgo.

72. In response to Hidalgo's Discrimination Complaints, MAG did not interview Putnam.

73. In response to Hidalgo's Discrimination Complaints, MAG did not interview witnesses.

74. In response to Hidalgo's Discrimination Complaints, MAG did not get a written statement from Hidalgo.

75. In response to Hidalgo's Discrimination Complaints, MAG did not get a written statement from Putnam.

76. In response to Hidalgo's Discrimination Complaints, MAG did not get a written statement from witnesses.

77. MAG did not take remedial action against any employees in response to Hidalgo's Discrimination Complaints.

78. On or about October 24, 2023, Hidalgo made an accommodation request for her pregnancy, corresponding due date, and pregnancy-related needs after giving birth. ("Accommodation Request")

79. Hidalgo's Accommodation Request would not cause MAG an undue hardship.

80. Hidalgo made the Accommodation Request because she was due to give birth in December of 2023.

81. The Accommodation Request included eight weeks of maternity leave.

82. The Accommodation Request included a private and clean space to pump breast milk upon her return to work.

83. Hidalgo made the Accommodation Request to John Lammert, a MAG Human Resource representative.

84. Lammert is a man.

85. Lammert denied Hidalgo's Accommodation Request.

86. Before denying Hidalgo's Accommodation Request, MAG did not determine whether Hidalgo's Accommodation Request would cause MAG an undue hardship.

87. MAG has no contemporaneously created documents reflecting any effort to determine whether Hidalgo's Accommodation Request would cause an undue hardship.

88. Before denying Hidalgo's Accommodation Request, MAG did not determine the cost of Hidalgo's Accommodation Request.

89. MAG has no contemporaneously created documents reflecting any effort to determine the cost of Hidalgo's Accommodation Request.

90. Before denying Hidalgo's Accommodation Request, MAG did not determine the cost of providing any accommodation besides Hidalgo's Accommodation Request.

91. MAG has no contemporaneously created documents reflecting any effort to determine the cost of providing any accommodation besides Hidalgo's Accommodation Request.

92. MAG did not seek outside funding to cover the cost of any undue financial hardship.

93. MAG has no contemporaneously created documents reflecting any effort to seek outside funding to cover the cost of any undue financial hardship.

94. Alternatively, MAG did not offer Hidalgo the opportunity to pay for any financial hardship that would result from Hidalgo's Accommodation Request.

95. Hidalgo's Accommodation Request was reasonable.

96. MAG did not provide Hidalgo's Accommodation Request.

97. In response to the Accommodation Request, Lammert told Hidalgo she must return to work within six weeks after giving birth and was not permitted to miss eight weeks.

98. Hidalgo gave birth on or about December 15, 2023.

99. Upon Hidalgo's return to work in February of 2024, MAG did not provide her with a private and clean space to pump breast milk.

100. Instead, Joseph Null, MAG's Head of Human Resources, provided Hidalgo with rooms that did not have locks, were dirty, and had cameras and windows. ("Failure to Accommodate")

101. Null is a man.

102. Between February and May of 2024, Hidalgo repeatedly complained about the Failure to Accommodate to Null and others. ("Failure to Accommodate Reports")

103. The Failure to Accommodate Reports included Hidalgo telling Putnam that she doesn't "get to pump when [she] need[s] to."

104. The Failure to Accommodate Reports included Hidalgo asking Null "Is there a possibility we can find another room? His office is super dirty and dusty upon every surface . . . as well as camera still has not been covered . . . and did we get any notice about the fridges so I have a place to properly store my milk?"

105. The Failure to Accommodate Reports included Hidalgo telling Null "We have not been able to make a sign yet or send an email out . . . so I have still just been pumping at my desk."

106. The Failure to Accommodate Reports included Hidalgo telling Null "Brad has been busy in the office on phone calls usually when I have to pump so I have been unable to kick him out when I do need to pump."

107. The Failure to Accommodate Reports constitute complaints of pregnancy discrimination.

108. In response to Hidalgo's Failure to Accommodate Reports, MAG did not interview Hidalgo.

109. In response to Hidalgo's Failure to Accommodate Reports, MAG did not interview Putnam.

110. In response to Hidalgo's Failure to Accommodate Reports, MAG did not interview Null.

111. In response to Hidalgo's Failure to Accommodate Reports, MAG did not interview witnesses.

112. In response to Hidalgo's Failure to Accommodate Reports, MAG did not get a written statement from Hidalgo.

113. In response to Hidalgo's Failure to Accommodate Reports, MAG did not get a written statement from Putnam.

114. In response to Hidalgo's Failure to Accommodate Reports, MAG did not get a written statement from Null.

115. In response to Hidalgo's Failure to Accommodate Reports, MAG did not get a written statement from witnesses.

116. MAG did not take remedial action against any employees in response to Hidalgo's Failure to Accommodate Reports.

117. On or about June 13, 2024, MAG constructively discharged Hidalgo's employment. ("Constructive Discharge")

118. The Constructive Discharge was an adverse action.

119. The Constructive Discharge was an adverse employment action.

120. The Constructive Discharge was the result of an intolerable work environment fostered by MAG.

121. MAG intentionally created the intolerable work environment.

122. The work environment that MAG created was one that a reasonable person would be unable to continue working in.

123. MAG created an intolerable work environment to force Hidalgo's resignation.

124. Hidalgo felt she had no choice but to stop working and take care of her child at home because of the inability to pump at work and the pervasive discrimination and harassment she experienced.

125. The Constructive Discharge was because of Hidalgo's gender.

126. The Constructive Discharge was because of Hidalgo's race.

127. The Constructive Discharge was because of Hidalgo's pregnancy.

128. The Constructive Discharge was because of Hidalgo's national origin.

129. The Constructive Discharge was because of Hidalgo's sexual orientation.

130. The Constructive Discharge was because of Hidalgo's ethnicity.

131. The Constructive Discharge was because of Hidalgo's gender.

132. The Constructive Discharge was retaliation for Hidalgo's Discrimination Complaints.

133. The Constructive Discharge was retaliation for Hidalgo's Failure to Accommodate Reports.

134. Upon information and reasonable belief, MAG replaced Hidalgo with a Caucasian employee.

135. Upon information and reasonable belief, MAG replaced Hidalgo with a male employee.

136. Upon information and reasonable belief, MAG replaced Hidalgo with a non-pregnant employee.

137. Upon information and reasonable belief, MAG replaced Hidalgo with an employee with a national origin of the United States.

138. Upon information and reasonable belief, MAG replaced Hidalgo with a heterosexual employee.

139. By constructively discharging Hidalgo's employment, MAG made it less likely for a reasonable employee to make a report or oppose conduct like Putnam's Discriminatory Comments and the Failure to Accommodate.

140. The Constructive Discharge constitutes retaliation.

141. The Constructive Discharge constitutes gender discrimination.

142. The Constructive Discharge constitutes race discrimination.

143. The Constructive Discharge constitutes pregnancy discrimination.

144. The Constructive Discharge constitutes ethnicity discrimination.

145. The Constructive Discharge constitutes national origin discrimination.

146. The Constructive Discharge constitutes sexual orientation discrimination.

147. MAG knowingly constructively discharged Hidalgo's employment.

148. MAG knowingly took adverse employment actions against Hidalgo.

149. MAG knowingly took adverse actions against Hidalgo.

150. MAG intentionally constructively discharged Hidalgo's employment.

151. MAG intentionally took adverse employment actions against Hidalgo.

152. MAG intentionally took adverse actions against Hidalgo.

153. MAG willfully constructively discharged Hidalgo's employment.

154. MAG willfully took adverse employment actions against Hidalgo.

155. MAG willfully took adverse actions against Hidalgo.

156. There was a causal connection between Hidalgo's gender and the Constructive Discharge.

157. There was a causal connection between Hidalgo's race and the Constructive Discharge.

158. There was a causal connection between Hidalgo's ethnicity and the Constructive Discharge.



SPITZ

159. There was a causal connection between Hidalgo's national origin and the Constructive Discharge.

160. There was a causal connection between Hidalgo's pregnancy and the Constructive Discharge.

161. There was a causal connection between Hidalgo's sexual orientation and the Constructive Discharge.

162. There was a causal connection between Hidalgo's race and the Constructive Discharge.

163. There was a causal connection between Hidalgo's Discrimination Complaints and the Constructive Discharge.

164. There was a causal connection between Hidalgo's Accommodation Request and the Constructive Discharge.

165. There was a causal connection between Hidalgo's Failure to Accommodate Reports and the Constructive Discharge.

166. MAG knew that constructively discharging Hidalgo would cause Hidalgo harm.

167. As a result of MAG's unlawful acts, Hidalgo has suffered and will continue to suffer harm.

**COUNT I: UNLAWFUL PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII**

178. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179. Under Title VII it is unlawful for an employer to discriminate against an employee on the basis of sex.

180. 42 U.S.C. § 2000e provides that the term "on the basis of sex" includes, but is not limited to, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions.

181. MAG, by an through its agents and employees, created and/or maintained a work environment hostile to pregnant women.

182. MAG constructively discharged Hidalgo's employment because of her pregnancy.

183. MAG's discrimination against Hidalgo based on her pregnancy violates Title VII.

184. MAG's constructive discharge of Hidalgo based on her pregnancy violates Title VII.

185. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT II: UNLAWFUL PREGNANCY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

186. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. Under R.C. § 4112.02 it is unlawful for an employer to discriminate against an employee on the basis of sex.

188. R.C. § 4112.01(B) provides that the term "on the basis of sex" includes, but is not limited to, "on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions."

189. R.C. § 4112.01(B) further mandates that pregnant women shall be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.

190. MAG, by and through its agents and employees, created and/or maintained a work environment hostile to pregnant women.

191. MAG constructively discharged Hidalgo's employment because of her pregnancy.

192. MAG's discrimination against Hidalgo based on her pregnancy violates R.C. § 4112.01 *et seq.*

193. MAG's Constructive Discharge of Hidalgo's employment based on her pregnancy violates R.C. § 4112.01 *et seq.*

194. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: FAILURE TO ACCOMMODATE UNDER PWFA**

195. Hidalgo restates each and every prior paragraph of this Complaint, as if fully restated herein.

196. Hidalgo informed MAG of her pregnancy.

197. Hidalgo informed MAG that she required a private and clean space to pump breast milk.

198. Hidalgo informed MAG that she required eight weeks of maternity leave.

199. Hidalgo requested accommodations from MAG, including eight weeks of maternity leave and a private and clean space to pump breast milk.

200. Hidalgo's requested accommodations were reasonable.

201. There was an accommodation available that would have been effective and would have not posed an undue hardship to MAG.

202. MAG failed to provide a reasonable accommodation.

203. MAG violated PWFA by failing to provide Hidalgo a reasonable accommodation.

204. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: RETALIATION IN VIOLATION OF PWFA**

205. Hidalgo restates each and every prior paragraph of this complaint, as if it were fully restated herein.

206. Hidalgo requested an accommodation for her pregnancy and related medical conditions.

207. In response to the lack of accommodation, Hidalgo made the Failure to Accommodate Reports.

208. Subsequent to Hidalgo's Accommodation Request and Failure to Accommodate Reports, MAG failed to accommodate her.

209. Subsequent to Hidalgo's Accommodation Request and Failure to Accommodate Reports, MAG constructively discharged her employment.

210. MAG's actions were retaliatory in nature based on Hidalgo's opposition to the unlawful discriminatory conduct.

211. Pursuant to 42 U.S.C. § 2000gg-1(5), it is an unlawful discriminatory practice to "take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee."

212. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

168. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. Hidalgo is a member of a statutorily protected class based on her race under Title VII.

170. Hidalgo is a member of a statutorily protected class based on her ethnicity under Title VII.

171. Hidalgo is a member of a statutorily protected class based on her national origin under Title VII.

172. MAG treated Hidalgo differently than other similarly situated employees based on her race.

173. MAG treated Hidalgo differently than other similarly situated employees based on her ethnicity.

174. MAG treated Hidalgo differently than other similarly situated employees based on her national origin.

175. MAG discriminated against Hidalgo based on her race during her employment with the company.

176. MAG discriminated against Hidalgo based on her ethnicity during her employment with the company.

177. MAG discriminated against Hidalgo based on her national origin during her employment with the company.

178. MAG constructively discharged Hidalgo's employment without just cause.

179. MAG constructively discharged Hidalgo because of her race.

180. MAG constructively discharged Hidalgo because of her ethnicity.

181. MAG constructively discharged Hidalgo because of her national origin.

182. MAG's discrimination against Hidalgo based on her race violates Title VII.

183. MAG's discrimination against Hidalgo based on her ethnicity violates Title VII.

184. MAG's discrimination against Hidalgo based on her national origin violates Title VII.

185. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VI: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

186. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

187. Throughout her employment, Hidalgo was fully competent to perform her essential job duties.

188. MAG treated Hidalgo differently than other similarly situated employees based on her race.

189. MAG treated Hidalgo differently than other similarly situated employees based on her ethnicity.

190. MAG treated Hidalgo differently than other similarly situated employees based on her national origin.

191. MAG violated R.C. § 4112.02(A) *et seq*. by discriminating against Hidalgo due to her race.

192. MAG violated R.C. § 4112.02(A) *et seq*. by discriminating against Hidalgo due to her ethnicity.

193. MAG violated R.C. § 4112.02(A) *et seq*. by discriminating against Hidalgo due to her national origin.

194. MAG constructively discharged Hidalgo's employment without just cause.

195. MAG constructively discharged Hidalgo because of her race.

196. MAG constructively discharged Hidalgo because of her ethnicity.

197. MAG constructively discharged Hidalgo because of her national origin.

198. At all times material herein, similarly situated non-Hispanic employees were not constructively discharged without just cause.

199. At all times material herein, similarly situated employees with a national origin other than Puerto Rico were not constructively discharged without just cause.

200. MAG violated R.C. § 4112.01 *et seq*. when they constructively discharged Hidalgo based on her race.

201. MAG violated R.C. § 4112.01 *et seq*. when they constructively discharged Hidalgo based on her ethnicity.

202. MAG violated R.C. § 4112.01 *et seq*. when they constructively discharged Hidalgo based on her national origin.

203. As a direct and proximate result of MAG's conduct, Hidalgo has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VII: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

204. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

205. Hidalgo is a member of a statutorily protected class based on her gender under Title VII.

206. MAG treated Hidalgo differently than other similarly situated employees based on her gender.

207. MAG discriminated against Hidalgo based on her gender during her employment with the company.

208. MAG constructively discharged Hidalgo's employment without just cause.

209. MAG constructively discharged Hidalgo because of her gender.

210. MAG's discrimination against Hidalgo based on her gender violates Title VII.

211. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VIII: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

212. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



SPITZ

213. Hidalgo is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

214. MAG treated Hidalgo differently than other similarly situated employees based on her gender.

215. MAG discriminated against Hidalgo on the basis of her gender throughout her employment with the company.

216. As a result of the gender discrimination Hidalgo suffered at MAG, she was constructively discharged.

217. MAG's discrimination against Hidalgo based on her gender violates R.C. § 4112.01 *et seq*.

218. MAG's constructive discharge of Hidalgo based on her gender violates R.C. § 4112.01 *et seq*.

219. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IX: HOSTILE WORK ENVIRONMENT BASED ON GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

220. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

221. During her employment with MAG, Hidalgo was subjected to offensive and harassing conduct by MAG based on her gender.

222. MAG knew or should have known of the harassing conduct against Hidalgo by Putnam.

223. MAG condoned, tolerated, and ratified this harassing conduct.

224. The harassing conduct was severe and/or pervasive.

225. The harassing conduct was offensive to Hidalgo.

226. The harassing conduct interfered with Hidalgo's ability to perform her job duties.

227. Putnam's offensive and harassing conduct created a hostile and/or abusive work environment for Hidalgo.

228. Putnam's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Hidalgo.

229. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages.

**COUNT X: HOSTILE WORK ENVIRONMENT BASED ON GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

230. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

231. During her employment with MAG, Hidalgo was subjected to offensive and harassing conduct by MAG based on her gender.

232. MAG knew or should have known of the harassing conduct against Hidalgo by Putnam.

233. MAG condoned, tolerated, and ratified this harassing conduct.

234. The harassing conduct was severe and/or pervasive.

235. The harassing conduct was offensive to Hidalgo.

236. The harassing conduct interfered with Hidalgo's ability to perform her job duties.

237. Putnam's offensive and harassing conduct created a hostile and/or abusive work environment for Hidalgo.

238. Putnam's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Hidalgo.

239. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages.

## COUNT XI: SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF TITLE VII

240. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

241. Hidalgo is a member of a statutorily protected class based on her sexual orientation under Title VII.

242. MAG treated Hidalgo differently than other similarly situated employees based on her sexual orientation.

243. MAG discriminated against Hidalgo based on her sexual orientation during her employment with the company.

244. MAG constructively discharged Hidalgo's employment without just cause.

245. MAG constructively discharged Hidalgo because of her sexual orientation.

246. MAG's discrimination against Hidalgo based on her sexual orientation violates Title VII.

247. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT XII: RETALIATION IN VIOLATION OF TITLE VII

248. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

249. As a result of the discriminatory conduct described above, Hidalgo made her Discrimination Complaints.

250. Subsequent to Hidalgo's Discrimination Complaints, MAG constructively discharged her employment.

251. MAG's actions were retaliatory in nature based on Hidalgo's opposition to the unlawful conduct.



SPITZ

252. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing a discriminatory practice.

253. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages.

**COUNT XIII: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq*.**

254. Hidalgo restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

255. As a result of the discriminatory conduct described above, Hidalgo made her Discrimination Complaints.

256. Subsequent to Hidalgo's Discrimination Complaints, MAG constructively discharged her employment.

257. MAG's actions were retaliatory in nature based on Hidalgo's opposition to the unlawful conduct.

258. Pursuant to R.C. § 4112.01(I), it is an unlawful discriminatory practice to "discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section. . ."

259. As a direct and proximate result of MAG's conduct, Hidalgo suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Veronica Hidalgo respectfully requests that this Honorable Court grant the following relief::

(a) Issue a permanent injunction:

(i) Requiring MAG to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against MAG of compensatory and monetary damages to compensate Hidalgo for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against MAG in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Hidalgo's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Trisha M. Breedlove*
Trisha M. Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
11260 Chester Road Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-4744

Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney For Plaintiff Veronica Hidalgo*

## JURY DEMAND

Plaintiff Veronica Hidalgo demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*__________
Trisha M. Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**



SPITZ